*Error assigned* was in declaring the act constitutional.

*William S. Windle,* for appellant.

*C. Wesley Talbot,* for appellee.

PER CURIAM, March 7, 1910:

The decree is affirmed at the cost of the appellant on the opinion of the Superior Court.

---

## Good's Estate.

*Assignment—Mental competency—Use of drugs—Inadequacy of consideration—Contracts—Sale.*

1. Where a young man twenty-four years of age sells to a person with whom he has no confidential relations a vested estate of the value of about $2,600 for $500, the fact that he had for several years been addicted to the use of opium and other drugs in excess is not sufficient to avoid the assignment when those present during the transaction, including the assignee and three notaries public, testify that his appearance and condition were then normal and there is evidence to the effect that when not under the influence of drugs he was above the average in intelligence.

2. Against imprudent and improvident contracts made by parties sui juris and of average intelligence the law affords no protection.

Argued Feb. 8, 1910.   Appeal, No. 327, Jan. T., 1909, by Robert H. Good, Jr., et al., from order of O. C. Chester Co., dismissing exceptions to auditor's report in Estate of Julianna H. Good, deceased.   Before FELL, C. J., BROWN, POTTER, ELKIN and MOSCHZISKER, JJ.   Affirmed.

Distribution of balance in hands of trustee under a will.

From the record it appeared that Robert H. Good, Jr., by the death of his father on April 9, 1902, became possessed of a legacy valued at about $2,600, from the estate of Julianna H. Good.   He assigned all his rights to Herman Murphy by assignment dated June 20, 1903, for $500.

The auditor, Theodore K. Stubbs, Esq., appointed by the court to make distribution of the fund in the hands of the trustee, awarded the legacy to the assignee, Murphy.

Exceptions to the auditor's report were dismissed by HEMPHILL, P. J., in the following opinion:

The only exception pressed upon the argument ot this case, was that the auditor erred in awarding to Herman Murphy, assignee of Robert H. Good, Jr., his share of the estate of $2,613.52, instead of awarding it to him.

The exceptant's contention is predicated upon the invalidity of the assignment to Murphy, and upon two grounds, first, mental incapacity of the assignor at the time of the execution of the assignment, second, inadequacy of price paid when a relation of confidence and trust existed between the parties.

The auditor has found that at the time of the negotiations and execution of the assignment the assignor did not lack mental capacity but knew and understood what he was doing; and that no confidential relationship existed between him and his assignee.

After a careful reading and consideration of all the evidence, the reports of the auditor and briefs of counsel we think his findings warranted and his conclusions right.

Robert H. Good, Jr., when quite young (about seventeen years old), acquired a fondness for alcoholic liquors and later for opium, morphine and cocaine and at times used all to excess. Twice, at least, he enlisted in the United States navy and made trips upon government transports to Cuba, the Philippine Islands and other places and was discharged in September, 1902, as one "very good in conduct and very good in ability."

When under drug influence he was sleepy, stupid and reticent; when not, he was more communicative, would read, play poker and do as others do, but was superior to the average seaman in education, intelligence and manners.

Upon his return to San Francisco in 1903, he still continued the use of the drugs to excess and was a great portion of the

time under their influence; he spent all his savings, ran into debt, for both board and drugs, and wrote to Mr. Shipley, whom he knew was trustee of the estate of Julianna H. Good, and received from him about $90.00 of accrued interest; when that was exhausted he called on Mr. Murphy, whose advertisement as a money loaner he had seen in a newspaper, for the purpose of procuring a loan, told him of his estate in the east, showed him Mr. Shipley's letters and gave him his address in Philadelphia and Mr. Murphy finally agreed to loan him $150, taking as security an assignment of his interest in said decedent's estate and advancing him from time to time small sums during their negotiations.

Before these negotiations were completed and loan consummated, Good asked Murphy to purchase his entire interest in the estate, fixing his price for the same at $500, which Mr. Murphy agreed to do after having his attorneys make further investigation in the east, through Mr. Shipley, in regard to the same; had a deed of assignment prepared, read it to Good and handed it to him for execution and acknowledgment.

Good selected his own notary, took the deed to him, asked him to explain the meaning of certain language used in the deed, which he did, and he then executed, acknowledged and delivered it to Mr. Murphy and received the balance due him, $444.50.

All who met him during these transactions, the three notaries public and Mr. Murphy, saw no evidence of his being under the influence of drugs, and testified that his appearance and condition were normal and his conduct that of a man of average intelligence; and after the receipt of this money he paid his debts, traveled through Southern California and other parts of the west and returned to his home in New York.

That the sale was an improvident one on Good's part may be conceded; indeed, it would have been so at any price if made, as it certainly was, to enable him to gratify his overweening passion for drugs.

Against imprudent and improvident contracts made by

parties sui juris and of average intelligence the law affords no protection.

The authorities cited and relied upon by counsel for exceptant, it seems to us, are not applicable to this case, for this was not the sale of an expectancy for an heir, but of a vested estate by a man twenty-four years of age, of good education and fair intelligence; who knew about what its value was or had the means of ascertaining it; nor were there confidential relations existing between him and Mr. Murphy; they were strangers to each other and dealt as such, he seeking Murphy, a money loaner, to procure financial assistance and dealing together as buyer and seller and consummating their deal upon the terms demanded by him.

The exceptions are therefore dismissed, the report confirmed, and an order made to pay out in accordance with the same.

*Error assigned* was in awarding the fund to the assignee.

*J. Frank E. Hause*, with him *Richard L. Ashhurst* and *William M. Hayes*, for appellants.—Standing in the relation Murphy did to Good it was incumbent upon him to show that he took no advantage of Good, and that the arrangement was fair and equitable: Darlington's App., 86 Pa. 512; Miskey's App., 107 Pa. 611; Worrall's App., 110 Pa. 349; Darlington's Est., 147 Pa. 624; Crothers v. Crothers, 149 Pa. 201; Plankinton's Est., 212 Pa. 235.

*A. M. Holding*, for appellee.—The interest assigned was wholly vested and therefore inadequacy of price is no evidence of fraud and does not invalidate the transaction: Davidson v. Little, 22 Pa. 245; Whelen v. Phillips, 151 Pa. 312; Phillip's Est., 205 Pa. 511; Singer's Est., 217 Pa. 295.

There is no evidence in this case to warrant the conclusion that Good was unsound mentally, unable, when not under the immediate influence of drugs, to understand what he was doing, or that at the time of any of these transactions he was under the influence of any drug: Keating's App., 2

Monaghan, 4; Walton's Est., 194 Pa. 528; Harmony Lodge's App., 127 Pa. 269; Graham v. Pancoast, 30 Pa. 89; Moorhead v. Scovel, 210 Pa. 446; Nace v. Boyer, 30 Pa. 99; Kelly's App., 108 Pa. 29; Dugan's Est., 6 Pa. Dist. Rep. 222; Wright's Est., 10 Pa. Dist. Rep. 133; aff'd in 202 Pa. 395; Tasker's Est., 205 Pa. 455; Bull's Est., 12 Pa. Dist. Rep. 393; Levis's Est., 140 Pa. 179.

PER CURIAM, March 7, 1910:

The order dismissing exceptions and confirming the report of the auditor is affirmed on the opinion of the learned president of the orphans' court.

---

## Talley v. Chester Traction Company, Appellant.

*Negligence—Street railways—Crossing—"Stop, look and listen."*

1. There is no fixed duty to stop imposed upon a driver before crossing the tracks of a street railway, and, unless the necessity for additional precaution is obvious, the question whether under the circumstances it should have been taken is for the jury.

2. Where a man driving along a highway parallel to a street railway line is struck by a car as he turns from the highway onto a public crossing at which his view is obstructed by trees and undergrowth between the road and the tracks, the question of his contributory negligence is for the jury, where the plaintiff testifies that when 100 feet from the crossing, from which point he had a view back for 500 feet along the tracks, he brought his horse to a walk and looked and listened for a car, and continued to look and listen as he drove on, and that as he turned from the highway to the crossing he leaned forward and looked but neither saw nor heard a car coming.

Submitted Feb. 8, 1910. Appeal, No. 5, Jan. T., 1910, by defendant, from judgment of C. P. Delaware Co., March T., 1908, No. 41, on verdict for plaintiff in case of Amor Talley v. Chester Traction Company. Before FELL, C. J., BROWN, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before JOHNSON, P. J.